**United States District Court**
For the Northern District of California

1

IN THE UNITED STATES DISTRICT COURT

2

FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

DANNY CAESAR,                                        No. C 08-01977 SBA (pr)

4
                    Plaintiff,                       **ORDER DENYING RENEWED**
5                                                    **MOTION FOR A TEMPORARY**
        v.                                           **RESTRAINING ORDER; AND**
6                                                    **DENYING SECOND MOTION FOR**
        ROBERT HOREL, et al.,                        **APPOINTMENT OF COUNSEL**
7
                    Defendants.
                                                     (Docket no. 12)
_____/
8

9                                        **BACKGROUND**

10          Plaintiff, a state prisoner, filed a pro se civil rights complaint under 42 U.S.C. § 1983,

11  seeking monetary damages as well as injunctive relief.  In his original complaint, Plaintiff alleged

12  deliberate indifference to his serious medical needs and supervisory liability claims against prison

13  officials at Pelican Bay State Prison (PBSP).  (Compl. at 3.)  Plaintiff named the following

14  Defendants: PBSP Warden Robert Horel; Medical Appeals Coordinator J. J. Kravitz; Chief Medical

15  Officer Dr. Sayre; Physician Dr. Rowe and Psychiatrist Dr. Douglas.  (Id.)

16          On April 16, 2008, Plaintiff filed a motion entitled, "Motion to Have the Court Put

17  Petitioner's Name on the List for the Pro Bono Project."

18          On September 2, 2008, Plaintiff filed his original motion for a temporary restraining order

19  (TRO), in which he asks the Court "temporarily transfer [him] to another prison for the main

20  purpose [of] medical (fair) care, avoidance of deliberate torture, and to keep from being robbed . . .

21  silly by Warden Horel's Ku Klux Klan styled administration."  (Sept. 2, 2008 Mot. for TRO at 1.)

22          In an Order dated October 21, 2008, the Court reviewed the complaint and dismissed with

23  leave to amend Plaintiff's deliberate indifference and supervisory liability claims.  The Court

24  dismissed all other claims.  The Court directed Plaintiff to file an amended complaint within thirty

25  days of the Order.  The Court construed Plaintiff's "Motion to Have the Court Put Petitioner's Name

26  on the List for the Pro Bono Project" as a motion for appointment of counsel and denied that motion.

27  The Court also denied Plaintiff's original motion for a TRO, as further explained below.

28

On November 17, 2008, Plaintiff filed his amended complaint.

On September 30, 2009, Plaintiff filed a motion entitled, "Motion to Compel Preliminary Injunction," which the Court construes as a renewed motion for a TRO.  In his renewed motion for a TRO, Plaintiff again seeks a transfer to a "more medically suitable prison facility."  (Sept. 30, 2009 Mot. for TRO at 1.)  He claims that he has not received "much needed chronic nerve pain medication since February 14, 2008," that he is basically "immobile" without a cane or wheelchair, that he is constantly harassed by PBSP staff members, and that his current cell conditions aggravate the frostbite residuals on his feet.  (Id. at 1-2.)

On November 9, 2009, Plaintiff filed a letter stating that he was receiving medication ("Celexa for depression and Benadryl as sleep-aid") for his mental health problems, but he was still not receiving: (1) medication to alleviate pain caused by the frostbite residuals on his feet; and (2) proper treatment for his problems with his "crippled digestive system."  (Pl.'s Nov. 9, 2009 Letter at 1.)

On February 24, 2010, Plaintiff filed a letter that described a possible "medical transfer" to a different prison recommended by a PBSP psychologist, Dr. David Archambalt.  In the letter, Plaintiff stated: that he filed an appeal on a Reasonable Modification or Accommodation Request (CDC 1824) relating to his "mental and physical ailments;" that he was interviewed by Dr. Archambalt; that Dr. Archambalt gave him access to a wheelchair when going "to and from" appointments outside of the unit he was housed in; and that Dr. Archambalt would "put [him] up for a medical transfer per [the CDC] 1824."  (Pl.'s Feb. 24, 2010 Letter at 1.)  The letter also explained that Plaintiff would be "brought (per use of the wheelchair) before [the] classification committee on 2-24-10, for determination of transfer (per [the CDC] 1824) to an appropriate [Security Housing Unit] program or to general population."  (Id.)

On March 1, 2010, Plaintiff filed a letter dated February 24, 2010 stating that he would be "more than likely transfering [sic] to Corcoran State Prison (Corcoran), soon."  (Pl.'s Letter dated Feb. 24, 2010 at 1.)  Plaintiff stated that due to his intermittent need for a wheelchair, the classification committee at PBSP decided that he would be transferred to Corcoran's SHU.

2

Also on March 1, 2010, Plaintiff filed a letter dated February 25, 2010 stating that "half of [his] psychiatric medications ha[ve] been discontinued as of today." (Pl.'s Letter dated Feb. 25, 2010 at 1.) Specifically, "the Benadryl [he] was using as a sleep-aid has been discontinued without as much as a replacement." (Id.)

On April 23, 2010, Plaintiff filed a notice of change of address, informing the Court that had officially arrived at Corcoran and that he was "comfortable with the wheelchair access [his] new institution" had provided him thus far. (Pl.'s Apr. 23, 2010 Notice at 1.) Plaintiff mentioned that he "still plan[s] to seek legal justice" against PBSP staff "for the years of hell and torture" he experienced. (Id.)

On May 17, 2010, Plaintiff filed a letter stating that he was receiving "pain medication (Nurotin [sic] [he] believe[s]), for [his] feet." (Pl.'s May 17, 2010 Letter at 1.) Plaintiff added that his mental health issues were "being addressed now too (Celexa for Depression and Visaril for a sleep-aide)" and that his "outlook on life is greatly improving." (Id.)

On July 8, 2010, Plaintiff filed a letter stating that since arriving at Corcoran, he has not been receiving "adequate medical treatment." (Pl.'s July 8, 2010 Letter at 1.) He adds that he is being deprived of "food, hygiene, medical and now personal appliances." (Id.) Since being transferred to Corcoran, Plaintiff claims to "find [himself] living with maximum nerve pain still . . . ." (Id. at 2.)

On September 9, 2010, Plaintiff filed a letter demanding a jury trial and requesting appointment of counsel. The Court construes this letter as his second motion for appointment of counsel (docket no. 24).

On September 21, 2010, Plaintiff filed another letter relating to the conditions of confinement at Corcoran. He claims that he still has not received "pain medication for [his] excruciatingly painful feet and left hip nerve pain." (Pl.'s Sept. 21, 2010 Letter at 2.) He also claims that Corcoran has not been accommodating the problems with his "digestive system." (Id.)

Having read and considered the papers submitted by Plaintiff, the Court DENIES Plaintiff's renewed motion for a TRO (docket no. 12), and also DENIES his second motion for appointment of counsel (docket no. 24).

1

**DISCUSSION**

2

**I.      Motion for a TRO**

3

In its October 21, 2008 Order, the Court stated:

4

> a TRO might be granted "without written or oral notice to the adverse
> party or that party's attorney only if: (1) it clearly appears from specific facts
> shown by affidavit or by the verified complaint that immediate and irreparable
> injury, loss or damage will result to the applicant before the adverse party or the
> party's attorney can be heard in opposition, and (2) the applicant certifies in
> writing the efforts, if any, that have been made to give notice and the reasons
> supporting the claim that notice should not be required.

5

6

7

8

(Oct. 21, 2008 Order at 7 (citing Fed. R. Civ. P. 65(b)).)  Neither was the case here.  Therefore, the

9

Court denied Plaintiffs original motion for a TRO, in which Plaintiff sought relief in the form a

10

transfer to another prison for the main purposes of "fair" medical care, "avoidance of deliberate

11

torture" and to avoid being "robbed" by Defendant Horel's "Ku Klux Klan styled administration."

12

(Id. (citing Mot. for TRO at 1).)

13

Before the Court is Plaintiff's renewed motion for a TRO, in which Plaintiff makes identical

14

claims to his original motion for a TRO.  Plaintiff again seeks a transfer to another prison.  Plaintiff

15

seeks such a transfer for better medical care because he has not received "much-needed" chronic

16

nerve pain medication "since February 14, 2008."  (Sept. 30, 2008 Mot. for TRO at 1.)  Plaintiff also

17

claims that his "immobile" condition necessitates that he be provided with the use a cane or

18

wheelchair.  (Id.)  Plaintiff also seeks a transfer because the cell he was placed in at PBSP "had cold

19

air blow[ing] through the cell's air ventilation all year long," aggravating the frostbite residuals on

20

his feet.  (Id. at 2.)  Finally, Plaintiff alleges that he was constantly harassed by certain PBSP staff

21

members to the point that he feared being "killed" or "seriously beaten or wounded" by them.  (Id.)

22

23

Plaintiff filed his renewed motion for a TRO while he was incarcerated at PBSP.  As

24

mentioned above, he has since been transferred to Corcoran.  The transfer to a different prison is

25

important because it makes much of his requested relief moot.  For example, once Plaintiff was

26

transferred to Corcoran, he was provided with the use of a wheelchair.  (Pl.'s Apr. 23, 2010 Notice at

27

1.)  Moreover, he also started receiving pain medication for the frostbite residuals on his feet.  (Pl.'s

28

May 17, 2010 Letter at 1.)  Finally, Plaintiff claims that his mental health issues are being addressed

**United States District Court**
For the Northern District of California

4

1    at Corcoran.  (Id.)  Accordingly, Plaintiff's renewed motion for a TRO (docket no. 12) is DENIED as

2    moot.[1]

3    **II.      Second Motion for Appointment of Counsel**

4          In and Order dated October 21, 2008, the Court denied Plaintiff's first motion for

5    appointment of counsel.  Before the Court is Plaintiff's second motion for appointment of counsel

6    (docket no. 24).

7          There is no constitutional right to counsel in a civil case unless an indigent litigant may lose

8    his physical liberty if he loses the litigation.  See Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 25

9    (1981); Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997) (no constitutional right to counsel in

10   § 1983 action), withdrawn in part on other grounds on reh'g en banc, 154 F.3d 952 (9th Cir. 1998)

11   (en banc).  The court may ask counsel to represent an indigent litigant under 28 U.S.C. § 1915 only

12   in "exceptional circumstances," the determination of which requires an evaluation of both (1) the

13   likelihood of success on the merits, and (2) the ability of the plaintiff to articulate his claims pro se

14   in light of the complexity of the legal issues involved.  See id. at 1525; Terrell v. Brewer, 935 F.2d

15   1015, 1017 (9th Cir. 1991); Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986).  Both of

16   these factors must be viewed together before reaching a decision on a request for counsel under

17   § 1915.  See id.

18         The Court is still unable to assess at this time whether exceptional circumstances exist which

19   would warrant seeking volunteer counsel to accept a pro bono appointment.  It is premature for the

20   Court to determine Plaintiff's likelihood of success on the merits.  Accordingly, Plaintiff's second

21   request for appointment of counsel is DENIED.  This does not mean, however, that the Court will

22   not consider appointment of counsel at a later juncture in the proceedings -- that is, after the Court

23

24   _____

25         [1]  Should Plaintiff seek to allege that some or all of his deliberate indifference claims from
26   his original and amended complaints extend to the conditions of his confinement at Corcoran, i.e.,
     any allegations that he is not receiving chronic nerve pain medication or treatment for problems with
27   his digestive system, those claims must be brought in a separate lawsuit in the United States District
     Court for the Eastern District of California, the proper venue for claims arising in Kings County,
28   where Corcoran is located.  See 28 U.S.C. § 1391(b); 28 U.S.C. § 84(b).

5

*United States District Court*
For the Northern District of California

has reviewed and served the claims in the amended complaint or after Defendants have filed their

dispositive motion, if they are ordered to do so -- such that the Court will be in a better position to

consider the procedural and substantive matters at issue.  If the Court decides that appointment of

counsel is warranted at that time, then it can seek volunteer counsel to represent Plaintiff <u>pro bono</u>.

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's renewed motion for a TRO (docket no. 12) is DENIED.

Plaintiff's second request for appointment of counsel (docket no. 24) is also DENIED.

The Court will conduct its review of the amended complaint in a separate written Order.


This Order terminates docket no. 12.

IT IS SO ORDERED.

DATED: September 30, 2010

_Saundra B Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

DANNY CAESAR,

        Plaintiff,

  v.

ROBET HOREL et al,

        Defendant.

_____/

Case Number: CV08-01977 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 6, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Danny L. Caesar D-07644
Corcoran State Prison
P.O. Box 3481
Corcoran,  CA 93212

Dated: October 6, 2010

                                  Richard W. Wieking, Clerk
                                  By: LISA R CLARK, Deputy Clerk