IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY CAESAR,<br><br>    Plaintiff,<br><br>  v.<br><br>ROBERT HOREL, et al.,<br><br>    Defendants.<br>_____/ | No. C 08-1977 SBA (PR)<br><br>**ORDER REVIEWING FIRST AMENDED COMPLAINT; AND DIRECTING PLAINTIFF TO FILE PROOF OF SERVICE OR SHOW CAUSE** |

**BACKGROUND**

Plaintiff Danny Caesar, who is currently incarcerated at California State Prison - Corcoran, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 against prison officials at Pelican Bay State Prison (PBSP), where he was formerly incarcerated. He seeks monetary damages. He has paid the full filing fee.

In his complaint, Plaintiff alleged various claims, including deliberate indifference to his serious medical needs and supervisory liability claims, against the following PBSP prison officials: Warden Robert Horel; Medical Appeals Coordinator J. J. Kravitz; Chief Medical Officer Dr. Sayre; Primary Care Provider Dr. Rowe; and Psychiatrist Dr. Douglas.

In an Order dated October 21, 2008, the Court dismissed Plaintiff's Eighth Amendment claims for deliberate indifference to serious medical needs with leave to amend in order for him to specify how Defendants were acting with deliberate indifference to his serious medical needs. Plaintiff's claim against Defendant Kravitz relating to the grievance process was dismissed with prejudice. Plaintiff's supervisory liability claims against Defendants Horel and Sayre were dismissed with leave to amend. Plaintiff's claims against Doe Defendants were dismissed without prejudice, and the Court granted Plaintiff leave to amend to add Doe Defendants if he learned their identities. The Court ordered Plaintiff to file an amended complaint to correct the deficiencies of his claims and to allege exhaustion on his administrative remedies within thirty days of the Order.

Also on October 21, 2008, the Court denied Plaintiffs motion for a temporary restraining

order (TRO), in which Plaintiff sought relief in the form a transfer to another prison for the main purposes of "fair" medical care, "avoidance of deliberate torture" and to avoid being "robbed" by Defendant Horel's "Ku Klux Klan styled administration." (Oct. 21, 2008 Order at 7 (citing Mot. for TRO at 1).)

On November 17, 2008, Plaintiff filed an amended complaint adding additional defendants, including PBSP Mail Room Supervisor R. Silva; Correctional Lieutenant S. W. Reppond; Physician C. Williams and Mail Room Office Assistant E. Reilly. Plaintiff alleges he filed administrative appeals relating to all the claims in his amended complaint; therefore, he believes that he did everything he could to exhaust his administrative remedies.

In his amended complaint, Plaintiff amends his supervisory liability claim against Defendant Horel, who is "responsible for policy, both written and unwritten, thereby setting the standard for the behavior of his staff." (Am. Compl. at 1.) Plaintiff cites numerous grievances that he filed and were subsequently denied, and connects them with Defendant Horel, claiming that "all were presented to [Defendant] Horel or his counterpart, and he chose to do nothing about them, and accordingly, should be held responsible." (Id.) He also amends his supervisory liability claim against Defendant Sayre, and states that Defendant Sayre "forbid Dr. Rowe from giving [him] a referal [sic] to Neurology and Podiatry," and that Defendant Sayre may have also been involved in his pain medication being cancelled." (Pl. Decl. at 2.)

Plaintiff also claims that he subscribed to "Show Magazine" in October, 2007. (Am. Compl. at 21.) Plaintiff alleges that he did not receive his December, 2007, April, 2008, and October, 2008 issues. (Id.) Plaintiff alleges that he tried to contact the publisher but never received a response. (Id.) Plaintiff believes that Defendants Reilly, Silva and Horel were working in concert to "intercept" his mail and deprive him of his "right to personal property." (Id. at 21-22.)

Plaintiff alleges that under the Americans with Disabilities Act of 1990 (ADA) and his status as a disabled veteran, he should qualify for "qualified-disabled-approved-housing-institutions." (Am. Compl. at 24.) Plaintiff claims he qualifies for such approved housing "because of [his] inability to stand for a complete fifteen minute shower, and being very prone to slipping and falling in the

shower; and [his] need for a wheelchair for daily recreation yard, because [he] can't stand or walk that long/far at one time, and also used for long journeys outside [his] housing unit; a cane for in-cell and inner-unit functioning." (Id. at 24.)  Plaintiff claims that Defendants Williams's and Sayre's CDC 1845 denials disqualified him "from adequate housing, or the use of necessary aides." (Id.)

Finally, Plaintiff also amends his deliberate indifference claims and declares that even after his previous civil rights action involving medical claims -- Case No. C 05-1098 SBA (pr) -- had been dismissed after the parties reached a settlement agreement in 2007,[1] he was still being "forced to live with chronic-nerve-pain in [his] feet, which have now spread upward into [his] left hip." (Pl. Decl. at 1-2.)  He claims that he was also being forced to live in an "extremely cold and humid cell." (Id. at 1.)  He adds that his "weak stomach" was not being treated as his regular diet consists of everything he should not eat. (Id.)  He alleges that Defendants intentionally gave him a "sub-par version of medicines." (Id.)  He asserts that "both [his] feet and digestive systems [were] destined to become cancerous." (Id. at 1-2.)  He claims that despite his diligent attempts at seeking medical treatment from prison staff for both his weak stomach and chronic nerve pain, Defendants "blockaded" such treatment. (Id. at 2.)

On September 30, 2009, Plaintiff filed a renewed motion for a TRO while he was still incarcerated at PBSP.

In an Order dated September 30, 2010, the Court noted that, as mentioned above, Plaintiff has since been transferred to Corcoran. The Court added that the transfer to a different prison was important because it made much of his requested relief moot.  Therefore, the Court denied his renewed motion for a TRO.  The Court further ordered that should Plaintiff seek to allege that some or all of the allegations of deliberate indifference from his original and amended complaints extend to the conditions of his confinement at Corcoran, i.e., any allegations that he is not receiving chronic nerve pain medication or treatment for problems with his digestive system, those claims must be brought in a separate lawsuit in the United States District Court for the Eastern District of California,

---

[1] On July 26, 2007, the Court issued an Order Dismissing Action upon being notified of the settlement of Plaintiff's previous civil rights action. See Case No. C 05-1098 SBA (pr).

3

the proper venue for claims arising in Kings County, where Corcoran is located. See 28 U.S.C. § 1391(b); 28 U.S.C. § 84(b).

On October 18, 2010, Plaintiff filed a letter to the Court in reference to the September 30, 2010 Order. Plaintiff's allegations in his letter that "certain staff members" from both Corcoran and PBSP are working in unison in a "systematic deprivation of [Plaintiff's] hygiene, and the means of obtaining, coupled with food and personal property deprivations, as a means of force against [his] voice for [his] constitutional rights" are conclusory. Even if the medical treatment Plaintiff is receiving at Corcoran is a continuation of his treatment at PBSP, Plaintiff may not seek to add such new claims against new Defendants because the alleged violations he is experiencing took place at Corcoran, which is not located in this district. See 28 U.S.C. § 1391(b). Thus, Plaintiff must bring such claims in a separate lawsuit in the proper venue.

The Court now reviews the amended complaint to determine whether it states cognizable claims for relief.

## **DISCUSSION**

### **I.     Exhaustion**

A question which must be answered before Plaintiff can proceed with his claims is whether he has exhausted available administrative remedies with respect to each claim.

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under this section, an action must be dismissed unless the prisoner exhausted his available administrative remedies before he filed suit, even if the prisoner fully exhausts while the suit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion of all "available" remedies is

4

mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective." Id. at 524; Booth v. Churner, 532 U.S. 731, 739-40 & n.5 (2001). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id. at 741. The purposes of the exhaustion requirement include allowing the prison to take responsive action, filtering out frivolous cases and creating an administrative record. See Porter, 534 U.S. at 525.

The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." See Cal. Code Regs. tit. 15, § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. See id. § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation. See id. § 3084.5; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). This satisfies the administrative remedies exhaustion requirement under § 1997e(a). See id. at 1237-38.

Based on Plaintiff's declaration regarding his administrative appeals and his belief that he did everything he could, the Court concludes that, for the purposes of this preliminary review of Plaintiff's amended complaint, he has satisfactorily shown that he has exhausted his claims.

**II.     Amended Legal Claims**

   **A.     Deliberate Indifference to Serious Medical Needs**

Deliberate indifference to serious medical needs is a cognizable claim for violation of the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. McGuckin, 974

5

F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Id. The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. Id. at 1059-60.

In order for deliberate indifference to be established, there must be a purposeful act or failure to act on the part of the defendant. Id. at 1060. Second, a prisoner can make no claim for deliberate medical indifference unless the denial was harmful. Id.; Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). But the court need not find that the defendant's actions are egregious or that they resulted in significant injury to the prisoner in order to find a violation of the prisoner's federal constitutional rights. Id. at 1060, 1061.

Here, Plaintiff alleges that Defendants Sayre, Rowe, Douglas, and Williams were deliberately indifferent to his serious medical needs. Specifically, Plaintiff claims that Defendants intentionally provided him with "sub-par version of medications," which he believed could cause both his feet and digestive systems "to become cancerous." (Pl. Decl. at 1.) Plaintiff alleges that with his frostbite condition, he has suffered from nerve pain due to a cold cell, as well as mobility complications since he did not have access to a walking aide. (Am. Compl. at 6, 10.) Plaintiff was given Terazosin, Omeprazole and Ranifidine as substitutes to Plaintiff's previous nerve-pain related medications. (Id. at 14.) Plaintiff claims that after trying the substitute medications for a period of time, he found that they were ineffective in alleviating his pain. (Id. at 15.)

Plaintiff also sought a referral for a podiatrist to address his athlete's foot fungal condition; however, his request was denied. (Pl. Decl. at 2.) Plaintiff claims that Defendant Rowe was not willing to provide him with enough prescripted foot cream to last for more than thirty days. (Am. Compl. at 20.) Plaintiff claims that having to visit Defendant Rowe for his prescription foot cream refill every thirty days, in addition to medical visits for his other medical complications, was

6

intolerable due to his limited mobility and lack of a cane or wheelchair. (Id.)

Finally, Plaintiff alleges that he suffered from a weak stomach. (Id. at 17.) Plaintiff claims that he was unable to double-cell because his weak stomach causes him to suffer "unbearable flatulence, belching and burping." (Id. at 18.) Plaintiff was seen by a stomach specialist and his former primary care provider, who advised him to avoid eating certain spicy, half-cooked foods and prescribed him with "real" Prilosec. (Id.) Plaintiff alleges that most of the meals he was served at PBSP contained spicy foods and half-cooked meats or vegetables. (Id. at 19.)

Plaintiff has addressed the deficiencies of his deliberate indifference claim; therefore, the Court finds that he has alleged a cognizable deliberate indifference to serious medical needs claim against Defendants Sayre, Rowe, Douglas and Williams.

### B.     Supervisory Liability Claims

A supervisor may be liable under § 1983 upon a showing of personal involvement in the constitutional deprivation or a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). A supervisor therefore generally "is liable only for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). This includes evidence that a supervisor implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Redman, 942 F.2d at 1446; see Jeffers v. Gomez, 267 F.3d 895, 917 (9th Cir. 2001).

Plaintiff has amended his supervisory liability claims by stating that Defendants Horel and Sayre "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045. Specifically, Plaintiff alleges that, as the warden, Defendant Horel handled Plaintiff's numerous appeals, which denied some of Plaintiff's requests for medical treatment. Plaintiff claims that, as the chief medical officer, Defendant Sayre was responsible for directing the medical staff to purposely deny him "fair medical care" for his chronic nerve pain and mobility problems. (Pl. Decl. at 2.)

7

Plaintiff has addressed the deficiencies of his supervisory liability claims; therefore, he has adequately pled cognizable supervisory liability claims against Defendants Horel and Sayre.

## III.  New Legal Claims in Amended Complaint

### A.  Deprivation of Personal Property

Ordinarily, due process of law requires notice and an opportunity for some kind of hearing prior to the deprivation of a significant property interest. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19 (1978). Neither the negligent nor intentional deprivation of property states a due process claim under § 1983 if the deprivation was random and unauthorized, however. Parratt v. Taylor, 451 U.S. 527, 535-44 (1981) (state employee negligently lost prisoner's hobby kit), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (intentional destruction of inmate's property).

If the deprivation is not random and unauthorized, but the result of "established state procedure," the availability of a post-termination tort action does not necessarily provide due process. Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-37 (1982) (failure on part of state commission to hold hearing within statutory time limits not permitted to terminate timely filed claim). In those instances, the Fourteenth Amendment requires "'an opportunity . . . granted at a meaningful time and in a meaningful manner,'. . . for a hearing appropriate to the nature of the case.'" Id. at 437.

Read liberally, the allegations in Plaintiff's amended complaint do not state a claim against Defendants Reilly, Silva and Horel for intentionally depriving Plaintiff of his missing "Show Magazine" issues.

Accordingly, Plaintiff's claims against Defendants Reilly, Silva and Horel for deprivation of private property are DISMISSED.

### B.  Disability Discrimination

Plaintiff has filed a new claim seeking "qualified-disabled-approved-housing" under the ADA. (Am. Compl. at 24.) Specifically, Plaintiff claims that because he is a disabled veteran, and his inability to stand for more than fifteen minutes at a time, he should at least be given a walking aide for both in-cell and inner-unit use. (Id.) Plaintiff alleges that Defendants Williams and Sayre

8

discriminated against him by disqualifying him from adequate housing or the use of walking aides. (Id.)

### 1. **Cause of Action**

Title II of the ADA, 42 U.S.C. § 12101 et seq., and § 504 of the Rehabilitation Act of 1973, as amended and codified in 29 U.S.C. § 794(a), prohibit discrimination on the basis of disability in the programs, services or activities of a public entity. The elements of a cause of action under Title II of the ADA are: (1) that the plaintiff is a qualified individual with a disability; (2) that the plaintiff was either excluded from participation in or denied the benefits of a service, program, or activity of a public entity, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of disability. Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th 2001); 42 U.S.C. § 12132. A cause of action under § 504 of the Rehabilitation Act essentially parallels an ADA cause of action. See Olmstead v. Zimring, 527 U.S. 581, 589-90 (1999); Duvall, 260 F.3d at 1135. A qualifying "disability" is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

### 2. **Proper Defendants**

Plaintiff cannot bring an ADA or § 504 action against individual prison officials, because the proper defendant in such actions is the public entity responsible for the alleged discrimination. Nor can he bring a § 1983 action against Defendants based on allegedly discriminatory conduct. See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act."). Therefore, Plaintiff's disability discrimination claims against Defendants Williams and Sayre -- who are individual prison officials --

are DISMISSED WITH PREJUDICE.

The proper defendants to Plaintiff's disability discrimination claims are the public entities that allegedly denied him equal access to their programs: PBSP and the California Department of Corrections and Rehabilitation (CDCR). State correctional facilities are "public entities" within the meaning of the ADA. See 42 U.S.C. § 12131(1)(A) & (B); Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998); Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997). State prisons that receive federal financial assistance are covered by the Rehabilitation Act. See Armstrong, 124 F.3d at 1022-23.

As state agencies, these entities are shielded from suit in federal court unless they waive their sovereign immunity or Congress has validly abrogated their sovereign immunity in the applicable statute. See Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985). In Board of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356 (2001), the Supreme Court held that Congress did not have the power to abrogate the States' Eleventh Amendment immunity under Title I of the ADA, but declined to reach the question whether Congress validly abrogated the States' immunity as to Title II. See Garrett 531 U.S. at 360 n.1. The Court specifically noted that Title II has somewhat different remedial provisions from Title I. Id. For purposes of initial review, the Court will assume that the California prisons do not enjoy Eleventh Amendment immunity with respect to Plaintiff's ADA claims.

As to the Rehabilitation Act, the Ninth Circuit has held that, "[b]ecause California accepts federal funds under the Rehabilitation Act, California has waived any immunity under the Eleventh Amendment" as to that Act's anti-discrimination provisions. See Clark v. State of California, 123 F.3d 1267, 1271 (9th Cir. 1997); see also Douglas v. California Dept. Youth Authority, 271 F.3d 812, 819 (9th Cir.), amended, 271 F.3d 910 (9th Cir. 2001) (adhering to Clark after Supreme Court's decision in Garrett.) Thus, Plaintiff may pursue claims for both money damages and prospective injunctive relief under the Rehabilitation Act directly against PBSP and the CDCR.

In sum, assuming Plaintiff has a valid disability discrimination claim, he may assert the claim in an amendment to the first amended complaint against PBSP and the CDCR, but not against

10

any individual defendants.

### 3. **Analysis of Claim**

Even assuming Plaintiff's allegation that he is a disabled veteran could establish that he is an individual with a disability under the federal statutes, he has not alleged discriminatory conduct. Plaintiff makes conclusory allegations that Defendants discriminated against him because of his disability by failing to provide him with adequate housing or walking aides. (Am. Compl. at 24.) Plaintiff does not allege that he was treated differently than similarly-situated non-disabled inmates and he does not allege that he was excluded from participation in a prison program or service because of his disability. Therefore, he does not appear to have a cognizable disability discrimination claim.

If Plaintiff names PBSP and the CDCR as Defendants, his ADA and Section 504 claims against these public entities are DISMISSED WITH LEAVE TO AMEND. Plaintiff may reassert the claims in an amendment to the first amended complaint if he can in good faith allege that he is an individual with a disability under the federal statutes, that the prison discriminated against him on the basis of his "disability," and if he names the proper Defendants.

### C. **Deliberate Indifference to Basic Needs**

Adequate food is a basic human need protected by the Eighth Amendment. See Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998). The Eighth Amendment right to food was clearly established as of at least 2001. Foster v. Runnels, 554 F.3d 807, 815 (9th Cir. 2009). Denial of food service presents a sufficiently serious condition to meet the objective prong of the Eighth Amendment deliberate indifference analysis. Id. at 812-13; see, e.g., id. at 812 (denial of sixteen meals over twenty-three days was "a sufficiently serious deprivation because food is one of life's basic necessities"); Id. at 812 n.1 (denial of two meals over nine-week period was not sufficiently serious to meet objective prong of Eighth Amendment deliberate indifference).

Prison officials may withhold food service for legitimate penological purposes (e.g., staff safety) but must prove the penological concern justified refusal to feed the prisoner. See Foster, 554

11

F.3d at 813-14 (guard not entitled to qualified immunity because she did not establish that prisoner's refusal to uncover back window of his cell caused safety issues for food service through food port where front window of cell was uncovered, nor did she establish that uncovering back window was a reasonable condition for the receipt of a meal by a prisoner). See, e.g., Freeman v. Berge, 441 F.3d 543, 546 (7th Cir. 2006) (withholding food from inmate who refused to comply with requirement of putting on pants or shorts was not cruel and unusual punishment).

Plaintiff claims that Defendant Reppond relied on witnesses' statements that subsequently placed Plaintiff on paper tray status for a rule violation, i.e., throwing a food tray at a correctional officer. (Am. Compl. at 4.) Plaintiff claims that he was then deprived of food because the paper plates contained "only perhaps one fourth of the content of regular plates." (Id.) Plaintiff fails to show that Defendant Reppond denied him food. Instead, Plaintiff was placed on paper tray status for throwing a food tray at a correctional officer, and as a precautionary measure for penological purposes. (Id., Ex. 6.)

Without more, Plaintiff's allegations fail to state a claim of deliberate indifference to his basic needs; therefore, it is DISMISSED for failure to state a claim.

## **CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1.    Plaintiff states a cognizable claim for deliberate indifference to serious medical needs against Defendants Horel, Sayre, Rowe, Williams and Douglas. Plaintiff states cognizable supervisory liability claims against Defendants Horel and Sayre.

2.    Plaintiff's disability discrimination claims against Defendants who are individual prison officials are DISMISSED WITH PREJUDICE. If Plaintiff names PBSP and the CDCR as Defendants, then his ADA and Section 504 claims against these public entities are DISMISSED WITH LEAVE TO AMEND, as directed above.

Within **thirty (30) days** of the date of this Order Plaintiff may file an amendment to the first amended complaint with his amended ADA and Section 504 claims against PBSP and the CDCR as

12

set forth above in Sections III(B)(3) of this Order.  (Plaintiff shall resubmit only his amended ADA and Section 504 claims and not the entire complaint.)  The failure to do so will result in the dismissal without prejudice of his ADA and Section 504 claims against PBSP and the CDCR.

       3.     The remaining claims against all other Defendants are dismissed.

       4.     Within **thirty (30) days** of the date this Order is filed Plaintiff shall either provide the Court with proof of service of the summons and complaint upon the Defendants against whom he alleges his deliberate indifference to serious medical needs and supervisory liability claims, or otherwise show cause why the complaint should not be dismissed without prejudice as to each unserved Defendant pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

       5.     It is Plaintiff's responsibility to prosecute this case.  Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

       6.     Extensions of time are not favored, though reasonable extensions will be granted.  Any motion for an extension of time must be filed no later than **fifteen (15) days** prior to the deadline sought to be extended.

IT IS SO ORDERED.

DATED: 10/29/10

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

G:\PRO-SE\SBA\CR.08\Caesar1977.OSC(4m)&reviewFAC.frm   13

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

DANNY CAESAR,

      Plaintiff,

  v.

ROBET HOREL et al,

      Defendant.

Case Number: CV08-01977 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 29, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Danny L. Caesar D-07644
Corcoran State Prison
P.O. Box 3481
Corcoran, CA 93212

Dated: October 29, 2010

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

G:\PRO-SE\SBA\CR.08\Caesar1977.OSC(4m)&reviewFAC.frm